UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WILLIAM B. McGRATH,       :
                          :
        Plaintiff,   :
                          :
    v.                    :   07 Civ. 11058 (SAS)
                          :
MICHAEL B. MUKASEY, in his official capacity as United   :   **ECF CASE**
States Attorney General, CRAIG S. MORFORD, in his official :
capacity as Acting Deputy United States Attorney General, and :
ROBERT S. MUELLER, III, in his official capacity as       :
Director of the Federal Bureau of Investigation,          :
                          :
        Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

                                      MICHAEL J. GARCIA
                                      United States Attorney for the
                                       Southern District of New York
                                      Attorney for Defendants

                                      SERRIN TURNER (ST-0646)
                                      Assistant United States Attorney
                                      86 Chambers Street
                                      New York, New York 10007
                                      Tel. No. (212) 637-2701
                                      Fax No. (212) 637-2686
                                      serrin.turner@usdoj.gov

**PRELIMINARY STATEMENT**

This case is brought in an attempt to obtain judicial review under the Administrative Procedure Act ("APA") of an internal decision of the Department of Justice ("DOJ"), concerning a whistleblower reprisal complaint made by a former agent of the Federal Bureau of Investigation ("FBI"). It should be dismissed for lack of subject matter jurisdiction, as judicial review of such decisions is precluded by the Civil Service Reform Act ("CSRA"). The CSRA establishes a comprehensive and exclusive remedial scheme with respect to prohibited personnel practices in the federal government, including reprisal for whistleblowing. Employees of the FBI are specifically excluded from the provisions of this remedial scheme allowing for judicial review. Accordingly, under clear Supreme Court and Second Circuit precedent, FBI employees are precluded from obtaining such review, under the APA or otherwise.

**BACKGROUND**

**A.    The Civil Service Reform Act**

The CSRA provides a comprehensive remedial scheme governing federal personnel matters, *see* Pub. L. 95-454, 92 Stat. 1111 (1978), *codified throughout* 5 U.S.C. – including reprisal for whistleblowing, *see* 5 U.S.C. § 2302(b)(8)(A). Generally under the CSRA, a federal employee is entitled to pursue a whistleblowing complaint outside the employee's own agency – including, ultimately, review in the federal courts. Thus, the CSRA provides that an employee may report whistleblowing allegations to the Office of Special Counsel ("OSC"), an independent office within the Executive Branch, which must investigate the matter. 5 U.S.C. §§ 1211, 1214(a)(1)(A). If OSC fails to act favorably on the complaint, the employee may seek redress from the Merit Systems Protection Board ("MSPB"), also an independent office within the Executive Branch. *Id.* §§ 1201, 1214(a)(3), 1221(a). Finally, the employee may seek review of any adverse MSPB decision in the Federal Circuit Court of Appeals. *Id.* §§ 1221(h)(1), 7703(b).

However, the CSRA exempts intelligence agencies – including the FBI – from the statute's general remedial scheme. *See* 5 U.S.C. § 2302(a)(2)(C)(ii) (excluding the FBI and other intelligence agencies from the Act's definition of "agency"). While the CSRA does provide FBI employees with certain whistleblower protection, it does so in a special, separately codified provision affording much narrower procedural rights. *See* 5 U.S.C. § 2303. In contrast to the CSRA's general remedial scheme, § 2303 does not provide FBI employees with the right to seek any form of external review with respect to allegations of whistleblowing. The provision does not grant any right to pursue a complaint with OSC or the MSPB or any right to review in the federal courts. Rather, it simply directs the Attorney General to promulgate regulations addressing whistleblower protection for FBI employees. *See id.* § 2303(b).[1]

The implementing regulations issued by the Attorney General essentially track OSC and MSPB review procedures, except that those procedures are administered by components internal to the Department of Justice. *See* 28 C.F.R. pt. 27.[2] Thus, an FBI employee who believes that he has suffered reprisal for whistleblowing may report the alleged reprisal to DOJ's Office of Professional Responsibility ("OPR") or Office of the Inspector General ("OIG"). *Id.* § 27.3(a)(1). After consultation, one of these offices (the "Conducting Office") proceeds to investigate whether there are reasonable grounds to believe that a reprisal has been taken – thus performing functions similar to those of OSC under the CSRA's general scheme. *Id.*

---

[1] The section further states that "[t]he President shall provide for the enforcement of this section in a manner consistent with applicable provisions of sections 1214 and 1221 of this title." *Id.* § 2303(c). The President has delegated his duties under § 2303(c) to the Attorney General. *See* 62 Fed. Reg. 23,123 (Apr. 14, 1997).

[2] In this way, the regulations adhere to § 2303(c)'s requirement that § 2303 be enforced "in a manner consistent with applicable provisions of sections 1214 and 1221" – which outline the functions of OSC and the MSPB.

§ 27.3(b)-(d); *cf*. 5 U.S.C. § 1214(a)(1)(A). If the Conducting Office determines that there are reasonable grounds to believe that a reprisal has been taken, it must so report to the Director of DOJ's Office of Attorney Recruitment and Management ("OARM"), together with any findings and recommendations for corrective action. 28 C.F.R. § 27.4(a); *cf*. 5 U.S.C. § 1214(b)(2)(B). If, on the other hand, the Conducting Office decides to terminate the investigation without finding reasonable grounds to suspect a reprisal, the complainant may request corrective action directly from the OARM Director. 28 C.F.R. § 27.4(c)(1); *cf*. 5 U.S.C. § 1214(a)(3). In either event, the OARM Director performs functions comparable to the MSPB: he or she must determine, based upon all the evidence, whether a protected disclosure was a contributing factor in the personnel action at issue and, if so, order any corrective action deemed appropriate. 28 C.F.R. § 27.4(e)(1); *cf*. 5 U.S.C. § 1221(e)(1). Finally, if the complainant is unsatisfied with the OARM Director's final decision, the regulations allow the complainant to request review by the Deputy Attorney General, who must set aside or modify the OARM Director's conclusions to the extent that they are arbitrary and capricious or unsupported by substantial evidence. 28 C.F.R. § 27.5.

**B.    Factual Background**

According to the complaint, plaintiff William B. McGrath is a former FBI agent who, in 1997, was responsible for heading the investigation of a Russian organized crime group operating in the New York area. Compl. ¶ 1. He claims that his superior instructed him to task a confidential informant with arranging a meeting with an investigative target; but McGrath refused out of concern for the source's safety. *Id.* ¶¶ 11-12. In protest, McGrath announced that he was resigning and left the office at 1 p.m. that afternoon. *Id.* ¶ 13.

Over the following week, McGrath spoke twice by telephone with then-Special Agent in Charge Carson J. Dunbar, Jr. *Id.* ¶ 14. McGrath told Dunbar the reasons for his refusal to task

the source. *Id.* Dunbar attempted to convince McGrath to rescind his resignation and to use his annual leave while he considered the issue; but Dunbar also stated that McGrath's sudden departure from service was unacceptable conduct for which there would have to be "some administrative follow-up." *Id.* ¶¶ 14, 17. Dunbar also raised the possibility of reassigning McGrath to another squad. *Id.* ¶ 14.

On December 17, 1997, McGrath was retroactively placed on AWOL status for four hours on December 5, 1997, in reflection of his sudden departure that day. *Id.* ¶ 18.

On December 30, 1997, Dunbar wrote a letter memorializing his phone conversations with McGrath. *Id.* ¶ 17. The letter stated Dunbar's belief that McGrath's departure "may have been in haste" and advised McGrath that he "had several alternatives rather than leaving the FBI." *Id.* Exh. C, at 3 (reprinting text of letter). The letter further authorized McGrath to take annual leave until the close of business on February 6, 1998, to determine whether to continue his employment with the FBI. *Id.*

By letter dated January 29, 1998, McGrath advised Dunbar that he had decided to resign, effective February 6, 1998. *Id.* ¶ 19. McGrath subsequently filed a whistleblower reprisal claim with DOJ's OIG, alleging that the FBI had retaliated against him for his disclosures to Dunbar regarding what McGrath viewed as an improper order from a superior. *Id.* ¶ 20. McGrath alleged that the FBI retaliated by, *inter alia*, placing him on AWOL status for four hours on December 5, 2007 and reassigning (or threatening to reassign) him to another unit. *Id.*

OIG terminated its investigation by letter to McGrath dated December 10, 2002. *Id.* On January 22, 2003, McGrath filed a request for corrective action with OARM. *Id.* After extensive proceedings, including discovery, *see id.* ¶¶ 21-40, OARM granted McGrath's AWOL claim and on January 29, 2007, issued an order directing the FBI to pay McGrath for four hours of regular

pay on December 5, 1997 and to reimburse McGrath for attorney's fees. *Id.* ¶ 53. OARM rejected McGrath's reassignment claim and miscellaneous other claims. *Id.* ¶¶ 30-45, 54-58. On March 21, 2007, McGrath appealed OARM's adverse rulings to the Deputy Attorney General, who denied the appeal on November 6, 2007. *Id.* ¶¶ 60-63.

The instant complaint was subsequently filed on December 5, 2007. The complaint asserts jurisdiction based on the Administrative Procedure Act, 5 U.S.C. § 702, and the federal question jurisdiction statute, 28 U.S.C. § 1331. *See id.* ¶ 4. The prayer for relief asks this Court to "vacat[e]" the Deputy Attorney General's decision denying plaintiff's appeal and to "grant[] plaintiff's whistleblower complaint in its entirety," awarding "such monetary relief deemed just and reasonable by the Court." *Id.* at 23.

## ARGUMENT

### THE CSRA PRECLUDES JUDICIAL REVIEW OF PLAINTIFF'S WHISTLEBLOWER COMPLAINT

The CSRA "comprehensively overhauled the civil service system," replacing the preexisting patchwork of rules and regulations with a "new framework for evaluating adverse personnel actions against [federal employees]." *Lindahl v. OPM*, 470 U.S. 768, 773-74 (1985). The statute "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443 (1988).

"The detailed protections and remedies afforded federal civil servants by the CSRA do not apply uniformly to all covered employees." *Dotson v. Griesa*, 398 F.3d 156, 163 (2d Cir. 2005). Rather, the statute extends varying levels of protection in an effort "to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Fausto*, 484 U.S. at 445. In particular, as explained above, the CSRA

excludes the FBI along with other intelligence agencies from its general remedial provisions. 5 U.S.C. § 2302(a)(2)(C)(ii). While the statute does extend limited whistleblower protection to FBI employees, it does so in a separate provision specific to FBI employees that does not include the right to judicial review. *Id.* § 2303.

Given that the CSRA specifically addresses the whistleblower rights of FBI employees, without extending to them the same right to judicial review afforded to federal employees generally, the clear implication is that plaintiff is precluded from seeking such review. As the Supreme Court has held in light of the comprehensive nature of the statute: where the CSRA does not include a particular class of employees within its judicial review provisions, but instead addresses the rights of those employees in separate provisions containing no right to judicial review, the contrasting provisions "combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action [at issue]." *Fausto*, 484 U.S. at 448; *see also Dew v. United States*, 192 F.3d 366, 372 (2d Cir. 1999) ("'[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded.'") (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)).

Plaintiff cannot escape the preclusive effect of the CSRA by bringing suit under the federal question jurisdiction statute or the APA. It is axiomatic that absent a waiver of sovereign immunity, the federal government is immune from suit. *E.g.*, *Federal Deposit Ins. Corp. v.*

*Meyer*, 510 U.S. 471, 475 (1994).[3]  The federal question jurisdiction statute plainly does not effect a waiver of sovereign immunity.  *E.g.*, *Keene Corp. v. United States*, 700 F.2d 836, 838 n.3 (2d Cir. 1983).  And while the APA does effect a waiver of sovereign immunity in certain circumstances, it does not do so here; for "[t]he APA does not waive sovereign immunity 'where a matter is statutorily committed to agency discretion or where another statute provides a form of relief which is expressly or impliedly exclusive.'"  *Dew*, 192 F.3d at 371 (quoting *Sprecher v. Graber*, 716 F.2d 968, 974 (2d Cir. 1983) (internal quotation marks omitted)); *see also* 5 U.S.C. § 701 (providing that the APA does not apply where "statutes preclude judicial review" or "agency action is committed to agency discretion by law").

Here, the CSRA commits review of FBI whistleblower complaints to the discretion of the Department of Justice; and, more generally, the CSRA provides the exclusive form of relief for federal employees aggrieved by prohibited personnel actions.  Hence, application of the APA is precluded.  *See Carducci v. Reagan*, 714 F.2d 171, 175 (D.C. Cir. 1983) (holding that the CSRA precludes APA claim as a vehicle for litigating federal personnel dispute); *cf. Dotson*, 398 F.3d at 168 (holding that the CSRA precludes similar use of *Bivens* actions).[4]

Two cases from the District Court for the District of Columbia have followed this reasoning in precisely the same circumstances here, both holding that § 2303 precludes judicial review of whistleblower complaints brought by FBI employees.  *See Runkle v. Gonzales*, 391 F.

---

[3] A suit against Executive officials in their official capacities, such as this one, is a suit against the United States and therefore is subject to the defense of sovereign immunity.  *See, e.g., Hawaii v. Gordon*, 373 U.S. 57, 58 (1963).

[4] The APA is also inapplicable here to the extent that plaintiff seeks money damages, since relief under the APA is expressly limited to "relief other than money damages . . . ."  5 U.S.C. § 702.

Supp. 2d 210 (D.D.C. 2005); *Roberts v. U.S. Dep't of Justice*, 366 F. Supp. 2d 13 (D.D.C. 2005).

As stated by the court in *Roberts*:

> Because it is evident that Congress intended to shield the FBI's employment-related decisions from judicial review, . . . FBI employees may not challenge such decisions in federal court under the APA. The plaintiffs here are asking this court to do what Congress and many courts have said it cannot do: fashion a judicial remedy outside the ambit of a statute – the CSRA – that was and is intended to be the exclusive remedy for federal employees alleged to have been aggrieved by actions related to their employment.

366 F. Supp. 2d at 21 (paragraph structure altered); *see also Runkle*, 391 F. Supp. 2d at 232-33 ("That Congress specifically excluded the FBI from [the CSRA's general whistleblower protection] procedures strongly suggests that it did not want outside entities to address such claims.").

The Second Circuit has applied the same logic in a parallel statutory context. In *Dew*, *supra*, a case also brought by FBI agents, plaintiffs claimed discrimination on the basis of military service; and at issue was whether plaintiffs could pursue such claims under the APA. The Court held that judicial review was not available under the APA given that the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq.*, establishes a comprehensive remedial scheme with respect to such claims. 192 F.3d at 373. As the Court explained, the USERRA entitles most federal employees to judicial review of claims covered by the statute, but it specifically "omits a similar civil enforcement scheme for FBI employees." *Id.* Analogizing to the Supreme Court's holding in *Fausto* concerning the CSRA, the Second Circuit held that, "[b]ecause USERRA carefully addresses the rights of federal intelligence agency employees, yet does not include them in provisions for judicial review, . . . judicial review of plaintiffs' claims is precluded." *Id.*; *see also Dotson*, 398 F.3d at 168 (expressly holding "what we implied in *dictum* in *Dew*" – that the CSRA's remedial scheme is preclusive).

The Second Circuit in *Dew* also noted the policy reason why the USERRA's judicial review provisions do not extend to employees of the FBI and other intelligence agencies: Congress wished to avoid intrusion on the internal functioning of intelligence agencies, as it was felt that "external enforcement . . . would be 'inconsistent with the current legal framework, which protects from outside review [] hiring and firing decisions in the national security context . . . .'" *Id.* (quoting letter from Director of Central Intelligence reprinted in S. Rep. No. 202-203 at 111 (1991)). The "current legal framework" that set the backdrop for the USERRA was, of course, the CSRA, whose similar treatment of the FBI and other intelligence agencies reflects the same concern. *See* 124 Cong. Rec. 28,770 (1978) (statement of Rep. Udall) (explaining the rationale for § 2303: "We gave [the FBI] special authority . . . to let the President set up their own whistle-blower system so that appeals would not be to the outside but to the Attorney General.").

Given the lack of any meaningful distinction between the statutory regime at issue in *Dew* and the provisions of the CSRA at issue here, *Dew* controls this case. Just as in *Dew*, to permit judicial review of an FBI employee's whistleblower complaint would contravene Congress' intent to channel such complaints into a strictly internal DOJ review process – so as to avoid external inquiry into sensitive law enforcement and intelligence matters. Accordingly, as in *Dew*, this Court should reject plaintiff's attempt to circumvent these restrictions via the APA.

## CONCLUSION

For the reasons above, plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.

Dated: New York, New York            MICHAEL J. GARCIA
       February 4, 2008               United States Attorney for the
                                      Southern District of New York
                                      Attorney for Defendants

                            By:   */s/ Serrin Turner*
                                   SERRIN TURNER
                                   Assistant United States Attorney
                                   86 Chambers Street, 3rd Floor
                                   New York, New York 10007
                                   Telephone: (212) 637-2701
                                   Facsimile: (212) 637-2686
                                   Email: serrin.turner@usdoj.gov