UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
WILLIAM B. McGRATH,                                         :
                                                            :    **OPINION AND ORDER**
                          Plaintiff,                        :
                                                            :    07 Civ. 11058 (SAS)
        - against -                                         :
                                                            :
MICHAEL B. MUKASEY, in his official                         :
capacity as United States Attorney General,                 :
CRAIG S. MORFORD, in his official capacity                  :
as Acting Deputy United States Attorney                     :
General, and ROBERT S. MUELLER, III,                        :
in his official capacity as Director of the                 :
Federal Bureau of Investigation,                            :
                                                            :
                          Defendants.                       :
------------------------------------------------------------X

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #: _____                    │
│ DATE FILED: 4/18/08               │
└──────────────────────────────────┘
```

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Plaintiff William B. McGrath brings suit against Michael B.

Mukasey, in his official capacity as United States Attorney General, Craig S.

Morford, in his official capacity as Deputy United States Attorney General, and

Robert S. Mueller, III, in his official capacity as Director of the Federal Bureau of

Investigation ("FBI") (collectively "defendants").  Plaintiff, a former FBI agent,

seeks judicial review of an order entitled "Review of Decision on Whisteblower

Complaint" issued by the Deputy Attorney General on November 6, 2007.  The

Review of Decision constitutes the final administrative determination of plaintiff's

whistleblower reprisal claims. The Review of Decision affirmed, in its entirety, a

final "Corrective Action Order" issued by the Department of Justice's ("DOJ")

Office of Attorney Recruitment and Management ("OARM") on January 29, 2007.

Subject matter jurisdiction is based on federal question jurisdiction[1] and the

Administrative Procedure Act ("APA").[2]

Defendants move to dismiss for lack of subject matter jurisdiction.

Defendants argue that judicial review of internal DOJ decisions regarding

complaints brought by present and former employees of the FBI is precluded by

the Civil Service Reform Act of 1978 ("CSRA").[3] Defendants explain that the

CSRA establishes a comprehensive and exclusive remedial scheme with respect to

prohibited personnel practices in the federal government, including reprisal for

whistleblowing. However, according to defendants, FBI employees are

specifically excluded from the provisions of this remedial scheme allowing for

judicial review. Defendants conclude that FBI employees are thus precluded from

obtaining judicial review under the APA or otherwise. I agree and hold that this

---

[1]     28 U.S.C. § 1331.

[2]     5 U.S.C. § 701 *et seq.*

[3]     Pub. L. 95-454, 92 Stat. 1111 *et seq.* (codified in various sections of Title 5 of the United States Code).

2

Court lacks subject matter jurisdiction. Accordingly, defendants' motion is granted and this case is dismissed.

## II.    BACKGROUND

Plaintiff alleges that he is a former FBI agent who, in 1997, was responsible for heading the investigation of a Russian organized crime group operating in the New York metropolitan area.[4] McGrath claims that on December 5, 1997, his supervisor, Supervisory Special Agent Raymond Kerr, directed him to contact a confidential informant ("CI") to arrange a meeting with the target of a criminal investigation (*i.e.,* "task the source").[5] McGrath refused Kerr's directive out of concern for the CI's safety.[6] In protest, McGrath announced that he was resigning and left the office at 1:00 p.m. that afternoon.[7]

The next week, McGrath spoke with then-Special-Agent-in-Charge Carson J. Dunbar, Jr. by telephone on two occasions.[8] McGrath told Dunbar that he refused to task the source because he believed doing so would have violated

---

[4]    *See* Complaint Seeking Judicial Review of Final Administrative Determination ("Compl.") ¶ 1.

[5]    *See id.* ¶ 10.

[6]    *See id.* ¶ 11.

[7]    *See id.* ¶ 13.

[8]    *See id.* ¶ 14.

3

FBI protocol and placed the CI in danger.[9]  Dunbar attempted to convince

McGrath to rescind his resignation and use his annual leave while he reconsidered

the issue.[10]  Dunbar stated that there would have to be "some administrative

follow-up" for McGrath's sudden departure from service.[11]  Dunbar also raised the

possibility of reassigning McGrath to another squad.[12]  By letter dated January 29,

1998, McGrath advised Dunbar that he was resigning from the FBI, effective

February 6, 1998.[13]  Approximately one year later, McGrath learned that he had

been placed on AWOL status for four hours on December 5, 1997, because of his

sudden departure that day.[14]

McGrath subsequently filed a whistleblower reprisal claim with the

DOJ's Office of Inspector General ("OIG"), alleging that the FBI had retaliated

against him for his disclosures to Dunbar.[15]  McGrath claimed that the FBI

retaliated against him by: (1) improperly placing him on AWOL status for four

---

[9]     *See id.*

[10]    *See id.*

[11]    *Id.* ¶ 15.

[12]    *See id.*

[13]    *See id.* ¶ 19.

[14]    *See id.* ¶ 18.

[15]    *See id.* ¶ 20.

hours on December 5, 2007; (2) reassigning him to another unit; and (3) placing false and misleading information about him in FBI records.[16]  On December 10, 2002, OIG terminated its investigation by letter to McGrath, who then filed a Request for Corrective Action ("RCA") with OARM on January 22, 2003.[17] In his RCA, "McGrath claimed that the FBI took the following personnel actions against him: (1) retroactively placed him on AWOL for four hours on December 5, 1997; (2) reassigned him to another squad; (3) gave him negative performance evaluations; (4) provided false and misleading information to prospective employers; (5) prevented him fr[o]m correcting his employment records by denying him access to them via FOIA; and (6) constructively discharged him."[18]

OARM conducted a jurisdictional hearing on May 14, 2004, in which McGrath testified.[19]  In an Interim Order dated January 26, 2005, OARM found that McGrath made out a prima facie claim with respect to his AWOL claim, but dismissed all of the other claims contained in his RCA.[20]  After extensive

---

[16]    *See id.*

[17]    *See id.*

[18]    *Id.* ¶ 21.

[19]    *See id.* ¶ 22.

[20]    *See id.*; Opinion and Order, OARM-WB No. 03-1, Ex. D to Compl.

proceedings, OARM granted McGrath's AWOL claim.  On January 29, 2007,

OARM issued its final Corrective Order Action, which awarded McGrath

$13,422.50 in attorney's fees and directed the FBI to pay McGrath four hours of

regular pay for December 5, 1997.[21]

On March 21, 2007, McGrath filed a letter brief with the Deputy

Attorney General, appealing OARM's adverse final and interlocutory rulings.[22]

On November 6, 2007, the Deputy Attorney General issued a Review of Decision

on Whistleblower Complaint, which constitutes the final administrative ruling on

McGrath's whistleblower complaint.[23]  In that Review of Decision, the Deputy

Attorney General stated:

> I considered each of your contentions on appeal and found
> that: (1) OARM properly concluded that you failed to
> prove the merits of your threatened reassignment claim; (2)
> OARM did not abuse its discretion in denying your request
> for a hearing on your threatened reassignment claim; (3)
> OARM properly dismissed your constructive discharge
> claim and any request for damages tied to that claim and
> did not misconstrue your testimony at the jurisdictional
> hearing; (4) OARM's December 21, 2005 decision

---

[21]     *See id.* ¶¶ 53, 59; Corrective Action Order, OARM-Wb No. 03-1, Ex. B to
Compl.

[22]     *See id.* ¶ 60.

[23]     *See id.* ¶ 62; Review of Decision on Whistleblower Complaint ("Review of
Decision"), OARM-WB No. 03-1, Ex. A to Compl.

dismissing your actual reassignment claim did not violate your due process rights or the principles of fundamental fairness; and (5) OARM properly concluded that neither SAC Dunbar's December 30, 1997 letter to you nor his February 2, 1998 electronic communication to the FBI's Personnel Division qualifies as a "performance evaluation" under 5 U.S.C. § 2302(a)(2)(A)(viii).[24]

The instant suit seeks to vacate the Review of Decision in its entirety and to obtain money damages.[25]

## III.  LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[26]  "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."[27]  In resolving a motion to dismiss under Rule 12(b)(1), a court may consider evidence outside the pleadings, including affidavits submitted by the parties, and is not limited to the face of the

---

[24]    Review of Decision at 1.

[25]    *See* Compl. ¶¶ 64-78.

[26]    *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[27]    *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004).

complaint.[28]  To defeat a motion to dismiss under Rule 12(b)(1), the plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence.[29]

## IV.   DISCUSSION

### A.    The Civil Service Reform Act - In General

The CSRA, enacted in 1978, "comprehensively overhauled the civil service system," replacing the preexisting patchwork of rules and regulations with a "new framework for evaluating adverse personnel actions against [federal employees]."[30]  The statute "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review."[31]

The CSRA provides a comprehensive remedial scheme governing federal personnel matters including reprisal for whistleblowing.[32]  Generally,

---

[28]    *See Robinson v. Government of Malaysia*, 269 F.3d 133, 140-41 (2d Cir. 2001).

[29]    *See Makarova*, 201 F.3d at 113.  *See also Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) ("[T]he party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction.").

[30]    *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773-74 (1985).

[31]    *United States v. Fausto*, 484 U.S. 439, 443 (1988).

[32]    *See* 5 U.S.C. § 2302(b)(8)(A).

8

under the CSRA, a federal employee is entitled to pursue a whistleblowing complaint outside the employee's own agency including, ultimately, review in the federal courts.[33] Under the CSRA, an employee may report whistleblowing allegations to the Office of Special Counsel ("OSC"), an independent office within the Executive Branch, which must then investigate the matter.[34] If the OSC fails to act favorably on the complaint, the employee may seek redress from the Merit Systems Protection Board ("MSPB"), also an independent office within the Executive Branch.[35] Finally, the employee may seek judicial review of any adverse MSPB decision in the United States Court of Appeals for the Federal Circuit.[36]

However, the CSRA exempts intelligence agencies – including the FBI – from the statute's general remedial scheme.[37] Although the statute does extend limited protection to FBI employees who are subject to reprisals for whistleblowing, it does so in a separate provision that does not include the right to

---

[33]    *See id.* § 7703 (a)(1).

[34]    *See id.* §1214(a)(1)(A).

[35]    *See id.* §§ 1214(a)(3), 1221(a).

[36]    *See id.* §§ 1221(h)(1), 7703(b).

[37]    *See id.* § 2302(a)(2)(C)(ii) (excluding the FBI and other intelligence agencies from the CSRA's definition of "agency").

judicial review.[38]  In contrast to the CSRA's general remedial scheme, section

2303 does not provide FBI employees with the right to seek any form of external

review, including judicial review, with respect to allegations of whistleblowing.

Rather, section 2303 simply directs the Attorney General to promulgate

regulations addressing whistleblower protection for FBI employees.[39]

Investigations of whistleblower complaints by FBI employees are not

subject to the OSC and MSPB procedures outlined above but are instead covered

by regulations issued by the DOJ.[40]  Thus, an FBI employee who believes that he

has suffered reprisal for making a protected disclosure (a "Complainant") may

report the alleged reprisal to DOJ's Office of Professional Responsibility ("OPR")

or Office of the Inspector General ("OIG").[41]  After consultation, one of these

---

[38]    *See id.* § 2303 ("section 2303").  Section 2303 prohibits reprisals against
FBI employees who disclose information they believe shows "a substantial and
specific danger to public health or safety."  *Id.* § 2303(a)(2).

[39]    *See id.* § 2303(b).  Section 2303 further states that "[t]he President shall
provide for the enforcement of this section in a manner consistent with applicable
provisions of sections 1214 and 1221 of this title."  *Id.* § 2303(c).  On April 14,
1997, President Clinton delegated his enforcement duties under section 2303(c) to
the Attorney General.  *See* 62 Fed. Reg. 23,123 (Apr. 14, 1997).  Pursuant to this
authority, the DOJ adopted a final Rule, codified at 28 C.F.R. § 27, under which
FBI employees may make protected disclosures.

[40]    *See generally* 28 C.F.R. pt. 27.

[41]    *See id.* § 27.3(a)(1).

10

offices (the "Conducting Office") must then investigate whether there are reasonable grounds to believe that the agency has engaged in an unwarranted reprisal.[42] If the Conducting Office finds reasonable grounds to believe that there has been a reprisal, it must report this conclusion to the OARM Director, together with any findings and recommendations for corrective action.[43] If, on the other hand, the Conducting Office decides to terminate the investigation without finding reasonable grounds to suspect a reprisal, the Complainant may request corrective action directly from the OARM Director.[44] In either event, the OARM Director performs functions comparable to the MSPB: the Director must determine, based upon all the evidence, whether a protected disclosure was a contributing factor in the personnel action at issue and, if so, order any corrective action deemed appropriate.[45] Finally, if the Complainant is not satisfied with the OARM Director's final decision, the regulations allow the Complainant to request review by the Deputy Attorney General.[46] The Deputy Attorney General must set aside or

---

[42]    *See id.* § 27.3(b)-(d).

[43]    *See id.* § 27.4(a).

[44]    *See id.* § 27.4(c)(1).

[45]    *See id.* § 27.4(e)(1).

[46]    *See id.* § 27.5.

11

modify the OARM Director's actions, findings or conclusions to the extent that they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence."[47]

## B.    The CSRA Precludes Judicial Review of Plaintiff's Whisteblower Claims

"The detailed protections and remedies afforded federal civil servants by the CSRA do not apply uniformly to all covered employees."[48]  Rather, the statute extends varying levels of protection in an effort "to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."[49]  As explained above, the CSRA excludes the FBI, along with other intelligence agencies, from its general remedial provisions including the right to judicial review.[50]  Where the CSRA does not include a particular class of employees within its judicial review provisions, but instead addresses the rights of those employees in separate provisions that do not contain the right to judicial review, the contrasting provisions "combine to establish a

---

[47]    *Id.*

[48]    *Dotson v. Griesa*, 398 F.3d 156, 163 (2d Cir. 2005).

[49]    *Fausto*, 484 U.S. at 445.

[50]    *See* 5 U.S.C. § 2302(a)(2)(C)(ii).

congressional judgment that those employees should not be able to demand

judicial review for the type of personnel action [at issue]."[51]

Plaintiff cannot escape the preclusive effect of the CSRA by bringing

suit under the federal question jurisdiction statute or the APA. It is axiomatic that

absent a waiver of sovereign immunity, the federal government is immune from

suit.[52] Moreover, the federal question jurisdiction statute does not effect a waiver

of sovereign immunity.[53] And while the APA does effect a waiver of sovereign

immunity in certain cases, it does not do so here. "The APA does not waive

---

[51] *Fausto*, 484 U.S. at 448. *Accord Dew v. United States*, 192 F.3d 366, 372 (2d Cir. 1999) ("'[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded.'") (quoting *Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984)).

[52] *See Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Here, plaintiff sued the individual defendants in their official capacities only. *See* Compl. ¶¶ 7-9. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Because the action is, in essence, a suit against the United States, it is subject to the defense of sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.").

[53] *See Keene Corp. v. United States*, 700 F.2d 836, 838 n.3 (2d Cir. 1983).

13

sovereign immunity 'where a matter is statutorily committed to agency discretion

or where another statute provides a form of relief which is expressly or impliedly

exclusive.'"[54]  Because the CSRA commits review of FBI whistleblower

complaints to the discretion of the DOJ, the APA does not confer subject matter

jurisdiction.[55]

There is recent case law from the District of Columbia holding that

section 2303 precludes judicial review of whistleblower complaints brought by

FBI employees.  In *Roberts v. United States Department of Justice*, three current

or former FBI employees sued under the APA alleging, *inter alia*, that "the

defendants improperly processed their whistleblower reprisal complaints."[56]  In its

initial discussion of subject matter jurisdiction, the *Roberts* court noted that

"jurisdiction over APA challenges to federal agency action is vested in district

---

[54]     *Dew*, 192 F.3d at 371 (quoting *Sprecher v. Graber*, 716 F.2d 968, 974 (2d
Cir. 1983) (quotation marks omitted)); *see also* 5 U.S.C. § 701 (APA does not
apply where "statutes preclude judicial review" or "agency action is committed to
agency discretion by law").

[55]     *See Carducci v. Regan*, 714 F.2d 171, 174-75 (D.C. Cir. 1983) (finding that
a federal employee may not pursue an APA claim in federal court where the CSRA
provides no basis for judicial review).  The APA is also inapplicable  to the extent
plaintiff seeks money damages as relief under the APA is expressly limited to
"relief other than money damages . . . ." 5 U.S.C. § 702.

[56]     366 F. Supp. 2d 13, 15 (D.D.C. 2005).

14

courts *unless* a preclusion of review statute specifically bars judicial review in the

district court."[57]  After discussing the review mechanisms available to FBI

employees under the CSRA, the court ruled that plaintiffs' allegations of CSRA

violations did not fall within its subject matter jurisdiction.[58]  In refusing to

"fashion a judicial remedy outside the ambit of a statute – the CSRA – that was

and is intended to be the exclusive remedy for federal employees alleged to have

been aggrieved by actions related to their employment,"[59] the court stated:

> As members of the excepted service, however, FBI
> employees may not employ the remedial scheme available
> to most other federal employees.   That Congress
> deliberately excluded FBI employees from the provisions
> establishing administrative and judicial review for
> personnel actions involving violations of CSRA
> implementing regulations suggests that Congress meant to
> *preclude* judicial review for such actions.
>
> * * *
>
> Because it is evident that Congress intended to shield the
> FBI's employment-related decisions from judicial
> review, . . . FBI employees may not challenge such
> decisions in federal court under the APA.[60]

---

[57]   *Id.* at 18 (citing *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) (emphasis in
original)).

[58]   *See id.* at 21-22.

[59]   *Id.* at 21.

[60]   *Id.* (citing *Fausto* for its holding that in failing to explicitly provide for
judicial review for certain decisions affecting non-preference excepted service
employees, the CSRA implicitly bars judicial remedies under the Back Pay Act)

The same court reached the same conclusion later that year, in *Runkle v. Gonzalez*.[61] In deciding that it did not have subject matter jurisdiction over plaintiff's whistleblower claim, the *Runkle* court explained that the:

> DOJ's final rule implementing 5 U.S.C. § 2303 makes clear Congress' intent to preclude judicial review of FBI whistleblowing investigations under 28 C.F.R. pt. 27. *See generally* Whistleblower Prot. for FBI Employees, 64 Fed. Reg. 58782 (Nov. 1, 1999). . . . If Congress had wanted to provide FBI employees with avenues outside of the DOJ to pursue whistleblower reprisal claims, it could have included them in the OSC and MSPB procedures described above. That Congress specifically excluded the FBI from those procedures strongly suggests that it did not want outside entities to address such claims. Whistleblower Prot. for FBI Employees, 64 Fed. Reg. at 58,785-86.[62]

The Second Circuit has applied similar logic in a parallel statutory context. In *Dew v. United States*, Special Agents of the FBI claimed that defendants violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA")[63] when, in 1996, they drafted/approved a new FBI military service policy which unlawfully prohibits Special Agents from serving in

---

(emphasis in original).

[61]    391 F. Supp. 2d 210 (D.D.C. 2005).

[62]    *Id.* at 232-33.

[63]    38 U.S.C. § 4301, *et seq.* USERRA prohibits employment discrimination based on military service. *See* 38 U.S.C. § 4311(a).

the Ready Reserve.  At issue was whether plaintiffs could pursue such claims

under the APA.  The Second Circuit  held that judicial review was not available

under the APA given that  USERRA establishes a comprehensive remedial scheme

with respect to such claims.[64]  The court explained that although USERRA entitles

most federal employees to judicial review of claims covered by the statute, it

specifically "omits a similar civil enforcement scheme for FBI employees."[65]

Analogizing to the Supreme Court's holding in *United States v. Fausto* concerning

the CSRA, the Second Circuit held that "[b]ecause USERRA carefully addresses

the rights of federal intelligence agency employees, yet does not include them in

provisions for judicial review, . . . judicial review of plaintiffs' claims is

precluded."[66]  Given the similarities between the statutory regime at issue in *Dew*

and the provisions of the CSRA at issue here,[67] *Dew* is extremely persuasive, if not

---

[64]    *See* 192 F.3d at 373.  "[W]e hold that USERRA does not provide federal
courts with subject matter jurisdiction to hear cases involving the FBI's military
service policy."  *Id.* at 374.

[65]    *Id.*

[66]    *Id. Accord Dotson*, 398 F.3d at 168 ("We now expressly hold what we
implied in dictum in *Dew*: the remedial scheme established by the CSRA
precludes federal civil service employees from challenging adverse employment
decisions through *Bivens* actions for money damages.").

[67]    "[W]hile section 4323 of USERRA expressly authorizes a civil enforcement
action against state and private employers, and section 4324 allows review by the
Courts of Appeal of MSPB decisions concerning certain federal agencies, section

controlling. As in *Dew*, to permit judicial review here would frustrate Congress'

desire to insulate intelligence agencies by relegating their employees to internal

DOJ review procedures, thereby avoiding external inquiry into sensitive law

enforcement and intelligence matters. Accordingly, as in *Fausto* and *Dotson*, I

find that the CSRA precludes judicial review of plaintiff's claims.[68]

### C.    Congressional Intent to Preclude Judicial Review of FBI Whistleblower Complaints Is "Fairly Discernible" from the CSRA's Statutory Scheme

Plaintiff argues that defendants have failed to meet their burden of

showing that Congress intended to preclude judicial review of FBI whistleblower

complaints. Relying on *Carlyle Towers Condominium Association v. FDIC*,

plaintiff contends that agency actions are presumptively subject to judicial review

and that this presumption can be rebutted only by "clear and convincing

evidence."[69] In *Carlyle Towers*, the Second Circuit stated:

> Federal district courts and courts of appeals, of course,
> have only the jurisdiction granted to them by Congress.

---

4325 omits a similar enforcement scheme of FBI employees." *Id.* at 373.

[68]    "Whether and to what extent a particular statute precludes judicial review is
determined not only from its express language, but also from the structure of the
statutory scheme, its objectives, its legislative history, and the nature of the
administrative action involved." *Block*, 467 U.S. at 345.

[69]    170 F.3d 301, 306 (2d Cir. 1999).

> Thus, it is within the constitutional power of Congress to deprive federal courts of jurisdiction to hear certain types of cases. However, courts will not infer congressional intent to limit their jurisdiction; rather, there is a presumption in favor of judicial review of an agency decision. The presumption may be rebutted only by "clear and convincing evidence" that Congress intended to preclude review.[70]

The Second Circuit then clarified what is meant by clear and convincing evidence. "The Supreme Court has explained that the 'clear and convincing evidence' standard in this context is not a strict evidentiary burden but may be met by a 'congressional intent to preclude judicial review [that] is fairly discernible in the detail of the legislative scheme.'"[71]

Such intent is indeed "fairly discernible" here. As the Supreme Court held in *Fausto*, an intent to preclude judicial review can be discerned where the CSRA addresses the rights of certain employees without including the judicial remedies made available to other employees.[72] Because the CSRA gives special

---

[70]   *Id.* (citations omitted).

[71]   *Id.* (quoting *Block*, 467 U.S. at 351 (further quotation marks and citation omitted)).

[72]   *See Fausto*, 484 U.S. at 448 ("The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter.").

19

attention to the whistleblower rights of FBI employees, yet excludes them from the judicial review provisions available to other federal employees, a congressional intent to bar judicial review is fairly discernible.[73]  Plaintiff's argument to the contrary is rejected.

## D.    The Cross-Reference in Section 2303(c) Does Not Establish the Right to Judicial Review

Plaintiff further asserts that section 2303 contains affirmative evidence that Congress intended to permit judicial review of FBI whistleblower complaints.  Specifically, plaintiff points to section 2303(c) which states: "The President shall provide for the enforcement of this section in a manner consistent with applicable provisions of sections 1214 and 1221 of this title."  These cross-referenced sections – 5 U.S.C. §§ 1214 and 1221 – refer, in turn, to sections of the CSRA that establish the general remedial scheme available to federal employees, from which FBI employees are excluded.  Plaintiff argues that because sections 1214 and 1221 afford a right to judicial review, the cross-referencing of these sections in section 2303(c) implies that Congress similarly intended to afford FBI employees the right to judicial review.

[73]    *See Dotson*, 398 F.3d at 169-70 ("Congress's intent to withhold CSRA review rights from judicial branch employees is discernable in the first instance from the structure of the CSRA.").

This argument is meritless.  Clearly, section 2303(c) cannot be construed to provide FBI employees with the very same procedural rights granted by sections 1214 and 1221.  Such a construction would defeat the whole purpose of excluding FBI employees from the CSRA's general remedial scheme in the first place.[74]  Rather than incorporating the provisions of sections 1214 and 1221 wholesale, section 2303(c) merely states that the President shall provide for enforcement of FBI whistleblower rights "*in a manner consistent* with *applicable* provisions of sections 1214 and 1221.*"*[75]  As explained above, the President has delegated this responsibility to the Attorney General.  Moreover, the regulations promulgated by the Attorney General comply with section 2303(c)'s directive by establishing remedial procedures that parallel the procedures set forth in section 1214 and 1221, but which are internal to the DOJ.

The legislative history of section 2303 confirms that Congress expected the President to implement section 2303(c) by working through the DOJ, as reflected in section 2303(b) which states: "The Attorney General shall prescribe

---

[74]    *See generally John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank*, 510 U.S. 86, 94-95 (1993) (stating that a court's examination of statutory language is "guided not by a single sentence or member of a sentence, but look[s] to the provisions of the whole law, and to its object and policy) (quotation marks and citation omitted).

[75]    5 U.S.C. § 2303(c) (emphasis added).

regulations to ensure that such a personnel action shall not be taken against an

employee of the Bureau as a reprisal for any disclosure of information described in

subsection (a) of this section."[76] Moreover, section 2303(c) by its own terms

states that "the President" shall provide for the enforcement of the rights of FBI

employees – plainly implying that the only remedial procedures available to FBI

whistleblowers must be limited to the Executive Branch. Accordingly, section

2303(c) reflects Congress' intent to leave enforcement of section 2303 solely in

the hands of the Executive. Furthermore, the President lacks the power to expand

the reach of the judicial review provisions contained in sections 1214 and 1221,

which provide a right to judicial review only with respect to decisions of the

MSPB and allow appeal only to the United States Court of Appeals for the Federal

Circuit.[77] Those provisions do not establish the right to challenge a decision of the

DOJ in federal district court, as plaintiff requests. Thus, far from evidencing

---

[76]    *See also* 124 Cong. Rec. 28,700 (statement of Rep. Collins) ("It is my
understanding that the President, when he wants to use this authority would go to
the Attorney General."); *id.* (statement of Rep. Udall) ("The President will be
empowered to set up a separate system, and . . . it would be required that it go
through the Attorney General."); *id.* at 28,770 (statement of Rep. Udall) ("We
gave [the FBI] the special authority . . . to let the President set up their own
whistle-blower system so that appeals would not be to the outside but to the
Attorney General.").

[77]    *See* 5 U.S.C. §§ 1214(c), 1221(h), § 7703(b).

22

Congressional intent to permit judicial review of FBI whistleblower complaints,

section 2303(c) provides further evidence that Congress intended to preclude such

review.

## E.   Plaintiff's Attempt to Distinguish *Dew* Is Unpersuasive

Plaintiff's attempt to distinguish *Dew* is wholly unpersuasive.

Plaintiff cites *Dew* for the assertion that "'when a statute provides a detailed

mechanism for judicial consideration of particular issues at the behest of particular

persons, judicial review of those issues at the behest of other persons may be

found to be impliedly precluded.'"[78] Plaintiff suggests that this proposition is

inapplicable here because "the FBI whistleblower statute at bar does not provide

for a 'detailed mechanism,'" but instead simply "directs the executive to develop

implementing procedures which in substance comport with 'parallel' provisions

imparting rights to other federal employees, which includes a right to judicial

review."[79]

Plaintiff misreads the quote from *Dew*, which states that where a

statute provides a detailed judicial review mechanism, but includes only certain

---

[78]    Plaintiff William B. McGrath's Memorandum of Law in Opposition to
Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Pl.
Mem.") at 7 (quoting *Dew*, 192 F.3d at 372).

[79]    *Id.* at 7-8.

23

employees within its scope, other employees are impliedly precluded from seeking

judicial review. Nothing in *Dew* turns on whether the statute establishes any sort

of separate "detailed mechanism" for the other, excluded employees. Indeed, the

statute reviewed in *Dew* – USERRA – does not do so. Like the CSRA, USERRA

establishes a detailed judicial review mechanism that covers most federal

employees, but excludes employees of the intelligence agencies.[80]  USERRA

separately addresses the rights of intelligence employees, but not through any

"detailed mechanism." Rather, the statute simply directs intelligence agencies to

establish appropriate internal remedial procedures.[81]  Similarly, section 2303

simply instructs the Attorney General to promulgate whistleblower protection

regulations for FBI employees. Hence, plaintiff's suggestion that the structure of

the statute at issue in *Dew* is distinguishable from the statutory structure of the

CSRA is without merit. Indeed, the *Dew* Court specifically analogized to the

CSRA in its reasoning.[82]  Furthermore, the Second Circuit subsequently noted that

---

[80]     *See Dew*, 192 F.3d at 372.

[81]     *See* 38 U.S.C. § 4315(a) ("The head of each agency referred to in section
2302(a)(2)(C)(ii) of title 5 shall prescribe procedures for ensuring that the rights
under this chapter apply to the employees of such agency.").

[82]     *See Dew*, 192 F.3d at 373 (observing that *Fausto* "resembles the case at
bar").

the CSRA's preclusive effect was "implied in dictum in Dew."[83]

Plaintiff also attempts to distinguish *Dew* to the extent that it relies on the USERRA's legislative history. According to plaintiff, the statutory analysis in *Dew* was rendered in conjunction with the serious consideration given to national security concerns, "an area in which the executive is accorded traditional deference under Article II of the Constititution."[84] Without citing any of the CSRA's legislative history, plaintiff contends that there is "no similar public policy or constitutional reason for being so deferential in the whistleblower context."[85] In fact, Congress' decision to limit whistleblower protection for FBI employees in the CSRA was based on precisely such concerns. Congress chose not to include FBI employees in the CSRA's general remedial scheme because of the sensitive national security and law enforcement issues that might be implicated by personnel disputes within the agency.[86] As in *Dew*, Congress intended to bar

---

[83]    *Dotson*, 398 F.3d at 168.

[84]    Pl. Mem. at 8.

[85]    *Id.*

[86]    *See* 124 Cong. Rec. 28,699-700 (statement of Rep. Derwinski) ("The best argument for exclusion of the FBI is probably the exclusion in the bill of other national security agencies. The Bureau's domestic work is as dangerous and rigorous as that of the Central Intelligence Agency . . . . The FBI is a sensitive agency."); *id.* at 28,700 (statement of Rep. Livingston) ("[F]ailing to exempt the FBI, like all other security agencies, . . . could mean the end of the FBI as we

FBI employees from obtaining any form of external review with respect to

whistleblower complaints, for fear of intruding on sensitive national security and

law enforcement operations. In sum, plaintiff has failed to adequately distinguish

*Dew*, a case with persuasive, if not controlling, authority.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.

The Clerk of the Court is directed to close this motion [Document # 3] and this

case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          April 18, 2008

---

know it – a centrally administered, tightly disciplined, responsive career law
enforcement agency."); *id.* at 28,770 (statement of Rep. Collins) ("Given the
demanding, sensitive, and unique responsibilities of the FBI, particularly its role
as the primary investigative arm of the Department of Justice, there is ample
rationale for providing it as great a degree of insulation with regard to its
personnel function as is practical.").

26

## - Appearances -

**For Plaintiff:**

Nelson M. Farber, Esq.
Law Office of Nelson M. Farber
150 East 58th Street, 34th Floor
New York, NY 10155
(212) 317-1400

**For Defendants:**

Serrin Turner
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-2701